The next matter, number 24-2074, Luis Patricio Dominguez-Landi v. Pamela J. Bondi. At this time, would counsel for the petitioner please come to the podium and introduce herself on the record to begin? Good morning. May it please the court, Ellen VanSkoyak appearing for the petitioner, Luis Patricio Dominguez-Landi. With the court's permission, I would like to reserve two minutes for rebuttal. Okay, you may. This case involves the BIA's erroneous denial of a motion to reopen removal proceedings brought by the father of a young victim of a devastating crime who had applied for U-Visa relief. The petitioner asked the BIA to reopen his removal proceedings and remand his case to the immigration judge so that he could pursue a continuance based on his family's pending U-Visa petition, enabling him to continue caring for his child and assisting with the law enforcement investigation of the crime committed against her, free of the threat of deportation. The BIA's decision contains two main errors. First, the BIA failed to consider the factors required by its own precedential decision in matter of Sanchez-Sosa and this court's decision in Benitez, including most importantly the petitioner's prima facie eligibility for the underlying U-Visa. How in any way is your case different from Benitez? Your Honor, I believe it is not different from Benitez. It is procedurally very similar to Benitez. Both cases involve U-Visa petitioners who submitted their U-Visa applications following the merits hearing in their underlying removal proceedings and then subsequently filed a motion to reopen based on that pending U-Visa petition timely within the 90-day reopen period before the BIA seeking. I may not have understood this correctly, but I understood the government to make an argument that Benitez was a little different because the petitioner there sought a continuance rather than a motion to reopen. Do you remember that from the government's briefing? So what the petitioner here sought is also exactly parallel with what Benitez sought. What Benitez sought was reopening in remand to the immigration judge. That's also what we sought here, reopening in remand to the immigration judge to consider a continuance under the matter of Sanchez-Sosa standard. So the second error in this BIA decision is that the BIA gave dispositive weight to a And that factor was the U.S. Citizenship and Immigration Services exclusive jurisdiction over U-Visa petitions. So Benitez and Sanchez-Sosa provide a very clear framework for the BIA to follow in considering motions to reopen from individuals with pending U-Visa petitions. The BIA must evaluate the petitioner's prima facie eligibility for a continuance upon reopening in remand to the immigration judge. This evaluation requires consideration of three factors. First, DHS's response to the motion. Second, the petitioner's prima facie eligibility for the underlying U-Visa. And third, any case-specific procedural considerations presented. And here in this case, there's no issue about a possible qualifying at some point for the U-Visa because the daughter in fact has the U-Visa, correct? So the daughter had received what's called a bona fide determination notice from the U.S. Citizenship and Immigration Services, meaning that they had evaluated her petition and determined it provided, established a prima facie case for relief. The only reason that she couldn't be issued a U-Visa already is because of the U-Visa backlog. There are only 10,000 visas available. Okay, but what you're saying is she has that prima facie U-Visa qualification. Yes, and that's clearly there. And that would also give your client that prima facie qualification derivatively-wise, right? Correct? Is that what you're saying? Right. So to establish derivative eligibility, the main requirement that one has to establish is the qualifying family relationship to the principal petitioner. So the BIA had in front of it the birth certificate of the child that would establish that qualifying familial relationship. So he would, too, qualify for a U-Visa derivatively on his daughter's petition once that petition was adjudicated by USCIS. But hers could be granted, his could not be granted at some point, correct? That is a possibility, yes. And that could take 10 years or 15 years or 5 years or 5 months. Right. The time limit. It's unpredictable, the timing of it, yes. Yeah. Let's talk about that. But, I mean, but I don't disagree with you that it does seem very similar to Benitez. Is there any distinction? I mean, is the fact that the father is independently examined and has to prove his own qualifications a distinction that makes a difference? So, Your Honor, I don't believe that it is a distinction that makes a difference. So while, so the BIA here had in front of it the entire U-Visa petition packet as well as the daughter's bona fide determination notice, and they could make an evaluation applying the Sanchez-Sosa factors as to whether the father met that prima facie eligibility requirement. So while in Benitez the petitioner had a deferred action notice under his name, Sanchez-Sosa itself doesn't actually require that anybody have one of these letters from USCIS. What it requires is that the immigration judge or the Board of Immigration Appeals evaluates the prima facie eligibility for the U-Visa. And in some cases, there is no letter at all that exists, and what the board is doing or what the IJ is doing is evaluating the U-Visa petition itself. And in this case, for example, within the petition it met all of the qualifications under the statute and regulations. There was a signed law enforcement certification attesting to the family's helpfulness. There were police and other government agency records detailing the crime and the family's participation in the law enforcement investigation, medical and counseling records, and again identity documents showing the relevant family relationships. So even had there been no bona fide determination notice, which there was, under Sanchez-Sosa the BIA or the IJ would still be required to make that prima facie determination. So the board said that you could file a motion to stay, and your position is you should not have to? So that's correct, Your Honor. Our position is the availability of a discretionary stay of removal, which again is discretionary and subject to changes in ICE policy from time to time, does not impact my client's statutory right to file a timely motion to reopen his removal proceedings within the 90-day period which he did. And that's a much stronger form of relief and protection for him if he has his removal proceedings reopened. He is not at the whim of changing enforcement policies from day to day and, you know, at risk of being separated from his family and unable to continue. If we were to rule in the government's favor in this case, you could still file a motion for stay of removal, correct? So we could file an application for a discretionary stay of removal before the Immigration and Customs Enforcement, which again is a discretionary application that anybody with a removal order could file, potentially, and doesn't detract from the importance of the statutory motion to reopen rights here, which again are a much more powerful protection for petitioners. Okay. Thank you. Thank you. It's here for Council for the United States. Please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court. Remy? Put the microphone a little closer. Good morning, Your Honors. May it please the Court. Remy Darucha Afodu representing the United States Attorney General. The government acknowledges the Court's published decision in Benitez addressing a similar issue as the one presented in this case. But the government posits that the instant case is qualitatively different for several reasons and asks the Court to deny the petition for review on that basis. As you asked Opposing Counsel— How is it different from Benitez? Pardon me, Your Honors. How is it different from Benitez? It is different from Benitez in many aspects. First of all, the petitioner in this case is a derivative beneficiary of the U visa. And as the record was before the Board, petitioner did not have a bona fide determination. The issue of prima facie eligibility— Differences? Pardon me, Your Honors. Did you argue those differences before us? Yes, Your Honor, we did. We specified that the daughter was the beneficiary and that the applicant is just a derivative beneficiary. And there are differences, even though there may be subtle nuances, Your Honor. From the record, the daughter received a bona fide determination on May 15, 2024. As of that time, petitioner had not received that bona fide determination. It has come in the interest of candor in the last couple of days, it has come to the attention of the government, that the petitioner has now received a bona fide determination. So it took about almost a year for petitioner to receive his bona fide determination. And the difference here— That's why he wanted to reopen to get a continuance, because the process takes so long. Well, yes, Your Honor, but the difference here is that the argument he made was that he had a bona fide determination, meaning— In a prima facie case of having a bona fide determination. But in this case, he did not, because he did not have that bona fide determination yet. And it's different— Let me ask something else. The BIA denied that he didn't have it yet, but the case is still alive because it's on administrative review before this court. Now, with what you told us, which I don't think none of us were aware, shouldn't we remand for the BIA to consider that bona fide determination? The government would be willing to place this case in mediation or whatever— No, but I mean, shouldn't we remand first to the BIA and say, BIA, now there's a change in fact. The case is still alive. We remand or maybe even retain jurisdiction for you to consider this bona fide determination. And if you decide we're not going to consider it, then it could come back before us. We can send the mediation. Who knows? Certainly, Your Honor, that is— What I'm saying is more than mediation, wouldn't remand be the best alternative here? Yes, Your Honor, and the government would be open to that for the board to consider the record based on this new evidence before the court now. That was about two weeks ago, or— Just a few days ago, Your Honor, is where we got the information about this. And so oral argument had already been scheduled. We actually had reached out to—we discussed with counsel last year regarding—earlier this year regarding this issue when I got the briefing assignment. And at that time, that was not the case. But now, again, we've gotten this newly available information that the petitioner himself now has the bona fide determination. And so the government's position is that the case as it was before the board, the board properly and correctly decided the issue. But even if it did at that time because there's still an appeal and the proceedings are still ongoing, we should remand it. Based on the current situation, Your Honor, the government would be amenable to having the board take another look at this case based on the new facts that have— Do I understand that the government would be open to participating in our camp mediation program or remanding for the board to apply the centrosocial factors? Is that your position? Basically, the position of the government is that we would be amenable for the case to be placed in camp and then have the board look at the record based on the newly available information. If that is an easier approach to this as opposed to—I mean, the court could easily remand to— So you say—I mean, so sending it to camp means that you as counsel would get the BIA involved at any rate? Yes, Your Honor, and that would— But let me ask the practicality because you say that the government has no problem if this case is remanded or camp. If we sent to camp, it might get resolved, but we still would have to—it might take longer. If we simply remand, we're doing that. So I think it's less—the resources are best used if it's remanded. You have no problem if it's—and, of course, I'm going to ask opposing counsel— Well, I think you'd have a problem depending on what we said in the remand. If we disagreed with you and said the BIA erred here, they should have followed Benitez and Sanchez-Sosa. I don't think you would support that. Yes, Your Honor, and that's what we— But if we said because of this new—this fact that just came up and brought to our attention, we're remanding so the BIA can consider that without saying anything else, that's the remand you would be amenable to, correct? Yes, Your Honor. Without making a ruling on the merits as to the Benitez issue. Yes, Your Honor, and I'd like to point out, too, that Benitez was not even discussed by the Board because it was not even mentioned in Petitioner's motion to reopen before the Board. So, again, as the government has argued, the Board's position with the record before it was correct in all respects because Benitez is totally different. Here it was a minor daughter, Petitioner's minor daughter, who had the bona fide determination. And there's a big difference here when a minor is given a bona fide determination because the security checks and everything else that goes into making a bona fide determination has to be done. It was done for the minor daughter who was about 13 or 14 at that time, but the one for Petitioner himself took longer. So, again, the Board's decision was correct in that regard. Based on the fact that the situation has changed, I don't know whether you would like me to go on because if you're going to argue the merits of the case, if the Court is going to remand or basically place this in camp, then it would be... I'm personally satisfied with the briefing. Yes. I think it's very thorough, and if we remand, we don't have to address the merits necessarily. As you request. Okay. Thank you very much.  Then the question on rebuttal that I'm going to ask opposing counsel, would you agree to remand so the BIA can reconsider this new evidence moving forward? Yes. Thank you. Thank you, Your Honor. Please do reintroduce yourself on the record. Yes. Good morning. Ellen Van Skuyk for the Petitioner. So Petitioner would respectfully request that this Court apply the same remedy that was applied in Benitez, which is remanding to the Board of Immigration Appeals with instructions that the case be reopened and sent back to the immigration judge for consideration of a motion to continue. Based on the bona fide determination, I take your point. Based on the record as it is before the Court. And, again, I think the... That's not before the Court. Right. Exactly. So I think that even without the evidence of the subsequently issued bona fide determination notice to Petitioner himself, the record supports reopening the case, remanding the case to the BIA with instructions to reopen and send down to the IJ for further consideration. On this point... Okay, but if we do it based just on the bona fide determination, we send it back to consider that, you're still going back to where you want. If we retain jurisdiction, how is your client prejudiced? Because you're not waiving your merits argument if we remand based upon new evidence. Okay. Yes. So I think... I guess I would draw the Court's attention not only to meet Benita's, but to the Eighth Circuit's decision in Cachaluno as well on this point. And just sort of just drawing the point again that... How is your client prejudiced about us remanding? Because we ultimately can maintain the issue alive. Okay. We send this back for the BIA or immigration judge to consider the new evidence, and if it's favorable to you, then it becomes moot. Your client has prevailed. If your client doesn't prevail based on that, then you have the issue before us, and you might have a second appeal for not considering that. So I think it's a win-win situation for your client. Okay. Well, tell us if it's a win-win. Do you understand the distinct... You could win based on your arguments, maybe, if this Court agreed with you. The government is saying things have changed. You're the only person who knows if the things that have changed, if this case is sent back to the BIA as the government concedes we could do, if that will prejudice your client. We can do that and retain jurisdiction so that these issues that you've raised here are still live if nothing good for your client happens before the BIA. But I think you need to take a position, if you can, as to whether what the government has agreed to will work for your client and not prejudice your client. So I think as long as this Court retains jurisdiction over the initial petition upon remand, then I think that that would work for my client.  Thank you. Okay, thank you. You're excused. Thank you, counsel. That concludes argument in this case. Thank you.